SAVANNAH, FLORIDA & WESTERN RY. CO. v. HOWARD.

1. There being evidence to authorize the verdict of the jury, and the trial judge being satisfied therewith, this court will not interfere with his discretion in refusing a new trial.
2. Under the evidence the verdict was not so excessive as to show bias or prejudice in the jury.

3. Where the plaintiff in error embodies in the bill of exceptions, or in extracts from the brief of evidence brought up to this court, all the evidence material to a clear understanding of the errors complained of, and the defendant in error, being dissatisfied with the abstract of the evidence specified by the plaintiff in error, petitions the judge to order the whole brief of evidence sent up, and he so orders, the extra cost of bringing up the whole brief will be charged to the defendant in error. It is so ordered in this case. *W. U. Telegraph Co.* v. *Hill*, 86 *Ga.* 500; *Bell* v. *Hutchings, Id.* 562: *Stewart* v. *DeLoach, Id.* 729.        *Judgment affirmed.*
November 25, 1892.

Before Judge FALLIGANT. Chatham superior court. December term, 1891.

Howard, while employed by defendant as car-inspector and while examining and feeling the wheel of a coach, had his hand crushed. He sued for damages and obtained a verdict. A new trial was granted; and this court affirmed that judgment. 84 *Ga.* 711. On another trial the plaintiff obtained a verdict for $2,416.50. Defendant's motion for a new trial was overruled, and it excepted. The grounds of the motion were, that the verdict was contrary to law and evidence, and excessive in amount.

The plaintiff testified: I was car-inspector for defendant, and when injured on the night of July 3, 1888, was inspecting train 78, which generally came in on one track, and as it came in the engine disconnected and the pusher came behind and pulled the sleeper on another track to make up another train, then took the first class coach and put it on the track ahead of the sleeper, and then the chair-car was taken and kicked on to another track as it did not go out with the train to be made up. I was feeling for flats on the baggage-car when the pusher struck it with so much force, my hand being under the pedestal strap, that I could not take it up or recover it before it got under the wheel. When the train comes in we have to look under the cars

with a large flambeau, to see whether there is anything broken, and to look for flats, chips, etc., on the wheels, and if anything wrong is found, to report it to the chief inspector. While I was examining as usual, the pusher struck and carried my hand under. The lick was very unusual. During my experience there of eighteen months, I never knew of such a lick. When the train comes in, the engine which brings it in disconnects from the express-car next to it and leaves a space of about six feet. I never knew it to be less, and often it is more. After the pusher had struck on the night in question, I found this space closed. Before this accident I had known of couplings to be made time and again so gently that the car I was feeling would not move an inch. I have seen the front cars move so gently that any man could take his hand away from the wheel without any danger at all; there is no danger at all to pull one's hand out, if it is done gently. My instructions were to feel every portion of the wheel, and the chief inspector told me, in the presence of others, if we did not feel every portion he would put some one there that would. There were no printed rules furnished me as to the method of performing my duties and no rules governing them, except rules given by an inspector. I became familiar with the duties by noticing how the inspector did his work when I was greaser, and after I became inspector I was told how to do it. A large flat is exceedingly dangerous; chip flanges are very sharp, and in turning a curve are apt to derail a train. When you come to a sharp place you can detect it; with the eye you could not see it, you can feel it. In addition to feeling for flats and chip flanges, inspectors on the same occasion have to look and examine the undergear of a car. We are provided with a hammer to strike the wheel; we strike it and listen to the sound to see whether the wheel is

solid, and then pass our hand over the wheel. I hold
the flambeau in one hand and feel for flats with the
other. I carry the flambeau in my right hand, which
is the best way to carry it to see underneath the car.
On the night I was hurt I had a flambeau and hammer,
and tapped the wheel. The flambeau was in my right
hand, and I was inspecting on the eastern side of the
train. There was a curve in the track, and from the posi-
tion I was in I could not see the pusher. I was inspect-
ing the third car of the train, that is the third from the
pusher or the second from the passenger engine. There
were five cars on this particular night. Twenty minutes
is usually allowed for the inspection of this train.
There were other inspectors besides myself at work on
the train at the time. The pusher comes from the rear
of the train and takes cars. When I was injured the
pusher was coupling on to the chair-car, and when
making the coupling the movement was exceedingly
sudden. I could not have done anything to extricate
my hand. I jerked my hand as soon as I could, but
the force and impetus of the wheel carried it under be-
fore I could take it out. When the pusher is drilling
the cars it rings a bell as it passes in front of me, but
when it comes to the rear it never does; if it did I
never heard it. There are other noises from busses,
hacks, etc., going on in the vicinity, so that you cannot
hear the pusher coming back. The only safety I have
is the carefulness with which the pusher is handled. To
pursue my duty I have to use my eyes with my flam-
beau to look under the car, and then to listen when we
strike the wheel. It is impossible to watch the pusher
and attend to your work and do it properly. I have
seen the coupling made without moving the cars; they
can do it easily, the couplers between the passenger-cars
being Janney couplers, which are very short and will
fasten without any trouble, the coupler being like a

spring. There is no danger in feeling the wheels, unless from carelessness on the part of those handling the pusher. The hand becomes sensitive to the movement of the wheel, after practice, and if the coupling is done properly you can take your hand off the wheel in time. To perform the service properly I consider the left hand best, and have been taught to use it. If you carried the flambeau in the left hand you would have to put it in front of you in order to see under the car, which would blind you, but it can be held in the right hand and not obscure the vision. In feeling the wheels I was told to feel under the pedestal strap, and we have to do it. It is not far from the track. I would not and could not feel every part of the wheel; would not feel under the curve; that would be dangerous; we feel about three inches from the pedestal strap. At the time of the lick I had my hand ready to feel; it was at least three inches from the rail in a vertical line. After I was injured the physician amputated the fingers of my hand, leaving the thumb and little finger. I suffered a great deal and did last winter. It becomes numb; the strength of the hand is gone, and the sense of touch is gone. For four days after the injury I suffered so I would have been glad for any one to knock me in the head; they feared I would get the lockjaw. I can use that hand now. After I was injured I looked around for work and got a place under the government, where I worked for a little while; but they wanted me to row a boat, and I told them that would be impossible. I was under the doctor's treatment for nearly a month, and defendant only paid me for the three days of the month I worked. I complained to the superintendent, and he caused me to be paid the balance of the month. I could work in August following the injury, but could not get work. I was not fit to do car-inspecting, because of the injury,

and am unfit for work that requires the use of my hands. Before the injury I had occupied positions that required the use of both my hands; had worked as a sawyer and could command $75 at that; but one must have both hands to be a sawyer. The injury incapacitated me for the position of greaser. I was a clerk at one time and was conductor for a little while, and since then have worked with the government and for Hammond, Hull & Company as night watchman, night clerk, etc. I know how to write, and think I am a man of some education. Clerical positions do not require the use of both hands. I was idle after my injury for some time on account of my failure to get employment; was idle from the time of the injury until March of the fol·lowing year. The first trial of this case was in March. I tried before that to get work, and after the first trial tried again. Did not succeed in getting employment until April, 1889. I was getting as car-inspector $1.75 a day, and with over time it amounted to $2.27½. I got from my position under the government, where I was employed for nearly six months, $1.50 for three hours work in the day and three at night, and between times drummed the city, so that I made at least $2 a day for six months, on an average. Afterwards I averaged $2 a day for a month, and after that got the position with Hammond, Hull & Company. That firm paid me at first $1.65 a day; then my wages were increased to $14 a week, and last summer it was $16 a week. I am still with that firm. My idea in accepting that position was to learn how to make sulphuric acid in order that they might increase my wages. They have been kind to me, and in the summer give me $16 a week and in the winter $14. At the time of the injury I was about forty-three. I am not a left-handed man. Do not know that I have done more clerical work than manual. Have planted and kept store. Had some experience

keeping store before my accident. Can do clerical work as well now as before; might not be able to write as rapidly, but can write as well. Can do the work of an accountant, write correspondence and work of that kind. Was able to work in August or September after the accident, so far as a clerical position was concerned. I averaged as a car-inspector between $64 and $65 a month. Had to work on Sunday, both as car-inspector and as tide inspector for the government. In September after I was injured I tried to get work. Was thoroughly familiar with the duties of car-inspector when I was hurt; knew how the cars were made up at night, and that they would be made up while I was inspecting. Knew that while I was inspecting the pusher would come back and make connection with the cars. I had known that for months, and accepted the position under the circumstances. Knew I had to inspect the train immediately after its arrival and while there was a great deal of noise around there. Knew I could not hear the bell of the pusher, and did not complain The only complaint I have to make is that the engineer did not handle the pusher carefully. Sometimes while the inspectors inspect the wheels the cars move, but so little you can recover your hand without trouble, so gradually that you can recover your hand without any trouble; they do not move often, but do move occasionally, and I would not say it was an unusual thing for them to move. They moved on an average three or four inches; occasionally I have seen them move a little more than that. It is very unusual for them to move a foot. I have seen them move, but to say how much I cannot say. I was injured on account of the suddenness with which the car was moved; if the force had been enough to knock the car six inches, my fingers would have been cut off. All the inspectors I have seen use their left hand; on the

eastern side of the train it is the best way, a great deal
easier and simpler than using the right. On the last
trial I testified that the pusher moved the car I was
working on two feet or more. It was impossible for me
to say exactly the distance the car was kicked. When
I was hurt I was about to feel the wheel, starting down-
wards, in a position sideways towards the pusher.
Went to feel the wheel between the pedestal strap and
the track. Was feeling for flats. Was looking under-
neath the car. If I had my face towards the pusher it
would be of no benefit to me. To feel for flats you have
to use both hands and eyes. You could see the pusher
going by, but cannot see it or hear it while in the rear
of you. I did testify on the last trial that "the pusher
did not ring a bell that night; they never ring the bell
when they make a coupling; they stop ringing when
the pusher gets on the track when the coupling is made.
I knew this the evening I got injured; I knew it every
night. There were no more engines around there that
night than usual. There were a great many pushers
around there. Do not think I heard any other engine
that night to distract my attention. The engineer is
governed by the signals given him by the switchman;
the switchman regulates the speed of the pusher by
signals given with his lantern. Do not know whether
the engineer knew the distance he had to come in order
to make the coupling. He knew we were working
there, and that by any careless handling of the train we
would be hurt.

The foregoing evidence was all that seems to have
any material bearing upon the question made as to the
excessiveness of the verdict. The plaintiff introduced
other witnesses whose testimony varied in some particu-
lars, but in the main corroborated him as to the facts
that he was properly engaged, in a proper position in
discharging his duties, and that an improper shock was

given to the car on which he was at work, by the pusher, etc.

ERWIN, DUBIGNON & CHISHOLM, for plaintiff in error.

R. R. RICHARDS and W. R. LEAKEN, *contra.*