JAMES CHAPMAN, RESPONDENT, v. SOUTHERN PACIFIC COMPANY, A CORPORATION, APPELLANT.

1. MASTER AND SERVANT.— NEGLIGENCE.— CONTRIBUTORY NEGLIGENCE.— QUESTIONS FOR JURY.— In an action for personal injuries, plaintiff testified that he complained of the dangerous condition of the place in which he was put to work, and that the persons in charge promised to repair it, and that when he returned to work he supposed the repairs had been made, but that the work had not been properly done, and on that account he was injured. Held, that the questions of defendant's negligence and of plaintiff's contributory negligence were for the jury.

2. ID.—DEFECTIVE APPLIANCES.—VICE PRINCIPAL.—NOTICE TO PRINCIPAL.—It is the duty of an employer to furnish suitable machinery, and reasonably safe places for the employees to work in, and he cannot escape responsibility for injury by delegating this duty to a servant of whatever grade. As to the other employees, such servant becomes the vice principal, and notice to him of defects and appliances is notice to the principal.

3. CHARGE TO JURY.—HARMLESS ERROR.—It is not error to refuse an instruction, the pertinent part of which is contained in instructions already given, and the balance of which is an abstract principle of law.

4. VERDICT.—EXCESSIVE DAMAGES.—A verdict for $3,300 in favor of a section man for the loss of two fingers and a permanent injury to two others on the left hand, so that they are devoid of strength, is not excessive.

(No. 591. Decided Aug. 31, 1895. 41 P. R. 551.)

APPEAL from the District Court of the Fourth Judicial District.  Hon. H. W. Smith, *Judge.*

Action by James Chapman against the Southern Pacific Company, a corporation, for personal injuries caused by defendant's negligence.  From a judgment for plaintiff, defendant appeals.  *Affirmed.*

*Messrs. Marshall & Royle,* for appellant.

*Messrs. Evans & Rogers,* for respondent.

KING, J.:

Plaintiff brought suit against the defendant for personal injuries, and obtained judgment for $3,300, from which the latter appeals.  The appellant contends that the evidence fails to show any negligence upon its part which contributed to the accident, either in furnishing a reasonably safe place for plaintiff to work in, or in any other respect, but, on the contrary, that it was the negligence of plaintiff in failing to inspect the braces of the platform on which he worked, and that, if there was negligence other than plaintiff's it was the negligence of fellow servants.

The plaintiff testified substantially as follows:  That in November, 1893, he was employed as a section hand, and worked in repairing defendant's railroad track, at or near Terrace, Utah.  On the 14th or 15th of the same month, defendant brought a portable sawmill to Terrace, to be used in crosscutting ties.  It was placed on a flat car, and operated by a small engine.  On the left of the saw, which was set in a fixed frame, was a platform connected with the car by hinges in the same manner as the leaf of a table.  This platform was nearly 10 feet long and about 20 inches wide, made by placing two planks, 2 inches in

thickness, side by side, and when raised was supported by two hinges and two iron rods or braces projecting at an angle of 45 degrees from the car—one end bolted to the car—in such a manner as to render the braces movable, and the other placed in a slot the shape of a horseshoe, which was fastened to the under side of the platform near the corner. In addition to these braces, an iron staple protruded from the center of the platform on the lower side, and to this (when the platform was raised, ready for sawing) was linked an iron hook, which was securely fastened to the car. This prevented the platform from jarring or "bouncing" when any ties were thrown upon it, and so kept the ends of the braces in the slots and the platform from falling. From the 1st of November, 1893, when he entered the employ of the defendant, until the 15th, he worked on the section, but on that day was directed to work on the sawmill, and stand on this platform, and aid in pulling the ties as they were being pushed towards him from the saw, and to catch the pieces of wood as they came from the saw and throw them from the platform and the car. The plaintiff did not have charge of the business, and did not know anything about it, except as it was explained to him by McComie. The section foreman, Whalen, selected from the men the number required to operate the sawmill and engine, and directed them to accompany McComie, who took them to the mill and instructed each man what to do. Whalen had charge of everything on the section. He was frequently about the mill, but gave no orders concerning it to the men employed thereon, and while it was in operation he was engaged upon the railroad track. McComie had charge of the sawmill, and "bossed" the persons working thereon. Whalen "detailed the men, and McComie showed us what to do, and how to do it." After plaintiff began work on the mill, he observed that the platform

upon which he was required to stand was worn very thin, caused by the ties being thrown thereon and the men standing upon it, and he called McComie's attention to its condition. The same evening the carpenter repaired it, substituting new planks for the old ones; McComie sending the plaintiff for the carpenter and belt man to make the repairs, and instructing them what to do. On the 18th of November, while at work, a heavy piece of tie fell from McComie's hands upon the platform, and caused it to "bounce up," which resulted in the braces slipping from their sockets and the platform falling. Plaintiff was thrown down, and his left hand came so close to the saw that the glove on his fingers was cut. The plaintiff then discovered that the safety brace (running from the car to the middle of the platform on the under side) had not been replaced, and said to McComie: "If this thing is not fixed, there is some person going to get hurt." And the answer was: "I will see that it is fixed." The platform was raised by plaintiff, and the side braces placed in their sockets, and he continued to work during the afternoon. Whalen was informed by him the same evening that unless the platform was fixed "somebody was going to get hurt," and the reply was: "Well, Jim, I have got nothing to do with it." On Monday morning, the 20th of November, plaintiff saw McComie and his foreman working about the mill. After loading ties for some time, the plaintiff was told by Whalen to go to work on the mill. It was running when he reached it, and he immediately took his position on the platform. He made no examination of the platform, as it was not his business to do so, and did only what he was directed. Upon this occasion he believed that the platform had been fixed since the Saturday preceding, when it fell, because he had seen men at work, and McComie had said it would be fixed. Neither

3

McComie nor Whalen told him to examine the platform to see if the braces were in the slots. "Had I looked on Monday morning under the platform, I could have told whether the middle brace had been put in; but a man with a saw-mill running, and another man making a motion for him to get up and pull the ties away, and him taking hold of the ties and pushing it away, has no time to look for anything." After being at work for 15 minutes, a large tie, about 15 inches in diameter, was being cut, and a heavy piece was left in McComie's hand, and in throwing it off it struck the platform where plaintiff was standing, and, there being no safety brace to hold the platform secure, the jar caused it to "bounce up," thereby releasing the side braces from their fastenings. The supports being gone, the platform fell, and the plaintiff was thrown against the saw and his hand lacerated, two fingers being severed and the others badly injured. "The platform could not have fallen if the safety brace had been placed in it."

The roadmaster, Whalen, and McComie were called as witnesses for defendant. A portion of their testimony was corroborative of plaintiff's statement. The points wherein they vary from plaintiff are as follows: They all testified that there never was a safety brace connected with the platform, and that, when the new planks were provided, the slots and braces were arranged in the same manner as before. Whalen and McComie testified that they told plaintiff and the other employés connected with the mill "to look out for the braces, and see that they were put properly in the slots," and denied that plaintiff had spoken about the safety brace, or that any promise had been made to affix one to the platform. They also stated that examinations were frequently made of the mill, and that after the planks were renewed it was observed that the platform was in good condition "so far as the workmanship was

concerned." Concerning the question of fellow servants, and who was in charge of the sawmill, the testimony of defendant's witnesses was in effect as follows: Mr. Hart, the road master, stated that Whalen was section foreman, and had charge of the yard, wood, and water on the section and the men working on the saw; that he employed and discharged them, and when repairs were necessary Whalen ordered them, but in his absence McComie or the engineer would. Whalen would detail men to help McComie run the mill, but he did not direct the men working with him on the car. If anything broke on the mill while Whalen was away, McComie had charge, and if Whalen was not there McComie would direct. "In the absence of Whalen he (McComie) would recommend what to do, direct when the mill was to be stopped and started, and would order repairs whenever needed about the mill." Whalen testified that he had charge of the section, and the direction of the sawmill. He directed the men at work on the mill when present. Some of the men he employed, and others were sent by the road master. "When I was not at the mill, McComie could call one of the men if he needed assistance. He had that authority. He had no authority to hire or discharge men. The mechanics and shopmen were not under his control. If McComie (when I was absent) asked them to repair the mill, they would respond. McComie was not particularly employed to attend the machinery, but to go to the shopmen and have some one repair it when out of repair, and he was supposed to observe any defects about the mill, and he frequently did." McComie testified that he was employed as sawyer shortly prior to the accident; that he examined the platform when it fell on Saturday, and the saw, "not because it was my duty, but because I was looking to the interest of others as well as myself. I think it was my duty to see to the safety of others." "When Whalen was not there, I was

not boss around the machine. I was overseer of the saw."

We think there was sufficient evidence to go to the jury, under proper instructions, upon the question of negligence, and to support the verdict in this case.

Appellant insists that the sufficiency of the construction of the platform is established by the evidence, and that, if there was negligence, it was in the adjustment of the appliances. Numerous cases are cited wherein it is held that when the employer furnishes suitable appliances or materials, which require arrangement or adjustment by employés, he is not liable to an employé for the negligence of coemployés in their arrangement or adjustment. This principle was fully recognized by the lower court, and the jury were told that "if the platform was properly constructed,—if it was not defective as a matter of fact, but was built in a sufficient and proper manner,—but when adjusting it and putting it in place, at the time they went to work, the plaintiff or his fellow servants negligently put it up in some insecure manner, adjusting it in such a way that it would fall, and it did fall, the plaintiff cannot complain of the defendant, because it was not responsible for that conduct." But the important consideration in the case is, was there a structural defect? Respondent claims that the platform was imperfectly and dangerously constructed by the omission of a safety brace; and that is the pivotal point in this case. Counsel assume that defendant fully discharged its duty in the matter of supplying suitable machinery and appliances and a reasonably safe position for plaintiff to work in. Assuming plaintiff's testimony to be true, was the platform reasonably safe? Would there not be grounds for reasonable men to reach the conclusion that it was negligence to place a man unacquainted with such work (except such knowledge as had been acquired in four or five days' service) upon a platform near a circular saw, operated by

steam, upon which heavy pieces of timber occasionally fell, and which depended for its support upon two braces which were apt to slip out whenever the platform received a blow? From the testimony it is clear that this insecurity of the platform could have been remedied. by a safety brace passing from the car to the underside of the platform, and there hooked into a staple. Of course, the employer is not bound to insure his employés against any defect in the appliance; but he is bound. to use reasonable care in the selection of his machinery and appliances and in their construction. And when that rule applies, the duty to furnish such machinery and appliances is one which the employer owes personally to the employés; and he cannot escape that duty by trusting it to an employé.

The trial court clearly recognized the distinction and the main point at issue, and instructed the jury that the defendant did not insure the plaintiff "against accidents while in its employ. But it did undertake that it would furnish him suitable appliances to work with, and a safe place to work in, and that this duty was the duty of the defendant itself; and if it failed and neglected to use ordinary care for the purpose of providing a safe place to work in, or suitable appliances to work with, and, by reason of such neglect and failure to use ordinary care, the plaintiff was injured, without fault or negligence upon his part, then he is entitled to recover in this case. In other words, gentlemen, to restate the proposition, if this platform which is complained of in the complaint was so constructed as to be unsafe,—was built in such a manner that it was improperly braced or insufficiently secured,—and the plaintiff was required under his employment to work upon it, and, without negligence or fault on his part, it fell with him, and occasioned this injury, then the defendant would be liable, provided that by the use of ordinary care it might have known of such defect. Now, if the

defect was one which was in the construction,—if it was built wrong in the first place, and insufficiently constructed to begin with,—and that was apparent to the person or company constructing it, then of such defect they had notice.    If it was one which resulted in the use of the apron,—that is, from its becoming worn and out of repair, —they could use ordinary diligence to ascertain whether it was becoming so out of repair.    And I charge you that it was their duty to inspect it for the purpose of determining that fact; to use all ordinary care,—to use such care as an ordinarily prudent man would use in his own affairs for the purpose of ascertaining if that contrivance was safe for his employés to work upon.    I charge you they had a right to use a folding platform of this kind; that the fact that it would drop, that the braces were not under it, and that it was so constructed would not be a negligent construction at all.    In other words, they had a right to use a platform of such design as they thought best suited to their work, provided they made it as safe as ordinarily prudent men would make it if undertaking to use the same kind of device."    This instruction, taken in connection with those which followed upon the questions of contributory negligence and the duty of the defendant when it had notice of the defect (if there was a defect), correctly stated the law as applicable to the facts of this case. We think there can be no doubt of the sufficiency of the evidence upon the questions of negligence in the construction of the platform, especially in view of the evidence that prior to the repairs—at the time plaintiff claims the safety brace was attached to it—the platform was never known to fall, while afterwards, when all parties admit there was no safety brace, it fell twice within two days. It was a proper question for the jury to determine whether there was a structural defect, and, if so, whether defendant had notice.

Appellant insists that plaintiff assumed all risk arising from the ordinary methods of running the mill, and that the defendant was not bound to provide other than a reasonably safe method of work, and a reasonably safe appliance with which to perform the work. No doubt, one who undertakes the duty of an employé assumes certain risks, but the assumption of risks does not exonerate the employer from the duty to furnish reasonably safe machinery with which to work, and reasonably safe places in which to work. The obligation rests upon the master, "whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master. To that end the master is bound to observe all the care which prudence and the exigencies of the situation require in providing the servant with machinery or other instrumentalities ordinarily safe for use by the latter. It is implied in the contract between the parties that the servant risks the dangers which ordinarily attend or are incident to the business in which he voluntarily engages for compensation; among which is the carelessness of those, at least, in the same work or employment, with whose habits, conduct, and capacity he has, in the course of his duties, an opportunity to become acquainted, and against whose neglect or incompetency he may himself take such precautions as his inclinations or judgment may suggest. But it is equally implied in the same contract that the master shall supply the physical means and agencies for the conduct of his business. It is also implied, and public policy requires, that in selecting such means he shall not be wanting in proper care. His negligence in that regard is not a hazard usually or necessarily attendant upon the business. Nor is it one which the servant, in legal contemplation, is presumed to risk, for the obvious reason that the servant who

is to use the instrumentalities provided by the master, has ordinarily no connection with their purchase, in the first instance, or with their preservation and maintenance and suitable condition after they have been supplied by the master." *Hough* v. *Railway Co.*, 100 U. S. 217. "It is equally well settled, however, that it.is the duty of the employer to select and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, and other means by which it is to be performed, and to keep them in repair and order. And this duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred so as to exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skillful colaborers, or from defective machinery or other instruments with which he has to work. His conduct implies that in regard to those matters his employer will make adequate provisions that no danger. shall ensue to him." *Railroad Co.* v. *Herbert*, 116 U. S. 647, 6 Sup. Ct. 590.

The appellant further insists that, if it was negligent in omitting to place a safety brace upon the platform, it.is chargeable to a fellow servant of the plaintiff; and it is strongly argued that the case of *Railroad Co.* v. *Baugh*, 149 U. S. 368, 13 Sup. Ct. 914, establishes that plaintiff and McComie were fellow servants. There can be no doubt but, when an employé can act in a dual capactity, he may be, as to a coemployé, a fellow servant, and at the same time be the *alter ego* of the . principal. The mere fact that McComie attended to the saw would not deprive him of his representative character. The undisputed evidence shows that, in the absence of Whalen, McComie directed the mill. He showed the men how to

work, and directed their labors. He ordered repairs, and his orders were obeyed. A principal cannot employ men, and then, by attempting to station them upon the same plane, claim that they are fellow servants, and thus shield himself from any liability by reason of defective machinery or dangerous positions in which his employés are required to work. We think the evidence in this case justified this instruction by the court, of which appellant complains: "Now, as to the matter of notice in regard to any defect which may have existed there, if you find that a defect did exist, if it was a defect that the defendant did not have notice of otherwise, I charge you that notice to Whalen or to McComie, under the undisputed testimony in this case, would be notice to the defendant. In other words, whoever represented the defendant there on the ground at that time, if notice was given to such person of such defect, that would be notice to the defendant; and if a promise to repair it was made by that person, that would be the promise of the defendant within the meaning of the instruction I have already given you." In the absence of Whalen, McComie represented the defendant, and his negligence in the construction of the platform would be the negligence of the principal. *Anderson* v. *Depot Co.*, 8 Utah, 128, 30 Pac. 305; *Reddon* v. *Railway Co.*, 5 Utah, 344, 15 Pac. 262; *Ryan* v. *Bagaley*, 50 Mich. 179, 15 N. W. 72; *Railroad Co.* v. *Stevens*, 20 Ohio, 415; *Railroad Co.* v. *Babcock*, 154 U. S. 198, 14 Sup. Ct. 978; *Malone* v. *Hathaway*, 64 N. Y. 5.

When the platform fell, on the Saturday preceding the accident, plaintiff testified that the attention of McComie was directed to it, and he promised to repair it. The point decided in the Baugh case is in no manner at variance with the views which we here express, and that case is clearly distinguishable from the point now under discussion. The principle involved in this instruction is not

that of the doctrine of negligence of a fellow servant. It is merely a question as to whether the company had notice of the defect. In the Baugh case the injury complained of was to a fireman, and was occasioned by the negligence of the engineer, whom the court held to be a fellow servant. In the case at bar plaintiff's contention is that the injury resulted from a defect in the construction and maintenance of the machinery and appliances upon which he was required by defendant to work. And, as above stated, the employer cannot escape responsibility by delegating to a servant the duty of furnishing suitable machinery and reasonably safe places for the employés to work in; and the grade of the servant to whom this duty is delegated makes no difference. As to other employés, he may be inferior, and his labors, aside from the duty of inspection, more menial; nevertheless, as to the duty of the master which is placed upon him, he becomes the vice principal. Plaintiff's injuries did not result from the negligence of McComie as a fellow servant, but are attributable to the negligence of the defendant in failing to furnish suitable appliance and a safe place for plaintiff to work in. "To provide machinery and keep it in repair, and to use it for the purpose for which it was intended, are very distinct matters. They are not employments in the same common business, tending to the same common results. The one can properly be said to begin only when the other ends. * * * In the repair of the machinery the servant represented the master in the performance of his part of the contract, and therefore, in the language of the instruction, his negligence in that respect is the omission of the master or employer in contemplation of law." *Shanny* v. *Androscoggin Mills*, 66 Me. 420. But it is urged that plaintiff had knowledge of the defect of the construction, and resumed work on the morning of the accident without an examination of the platform.

Plaintiff's testimony is to the effect that on the 18th of November both McComie's and Whalen's attention was called to the absence of the safety brace, and the former said he had nothing to do with it, and the latter promised to have it fixed; that on the morning of the 20th the mill was in operation when he was directed to resume work, and that from the promise which had been made, and his observations of work by McComie about the mill, he believed the platform had been made secure.

. The court instructed the jury: "In this case, if the plaintiff complained to the proper officer of the defect in the apparatus with which he was required to work, and that officer promised to remedy the defect, and the servant, in reliance upon the fulfillment of the promise, continued in the work, and this defect in the apparatus was not of such a character as to render it unavoidably dangerous to continue work, such continuance in the work is not contributory negligence on the part of the plaintiff; and, of course, in the service of the railroad company, it is sufficient that a complaint be made to, and the remedy promised by, that officer who is charged with the duty, in the one case, of ordering repairs, or in the other of discharging the negligent fellow servants." In the case of *Hough* v. *Railway Co., supra,* the decedent had knowledge of the defective condition of the cowcatcher or pilot, and complained thereof to the master mechanic and the foreman of the roundhouse, and they promised that it should be promptly remedied. The court say: "It may be that he continued te use the engine in the belief that the defect would be removed. * * * If the engineer, after discovering or recognizing the defective condition of the cowcatcher or pilot, had continued to use the engine without giving notice thereof to the proper officer of the company, he would undoubtedly have been guilty of such contributory negligence as to bar a recovery so far as such defect was found

to be the efficient cause of the death. \* \* \* But there can be no doubt that, where a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby within such a period of time after the promise as it would be reasonable to allow for its performance, and, as we think, within any period which would not preclude all reasonable expectation that the promise might be kept." "If a servant," says Mr. Cooley in his work on Torts (page 559), "having the right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless, or until he makes his assurances good. Moreover, the assurances removed all ground for an argument that the servant, by continuing the employment, engages to assume the risks." In the case of *Pieart* v. *Railway Co.* (Iowa), 47 N. W. 1019, the court say: "It appears that the yard master had no authority to direct repairs on the engine, but, if an engine was furnished him lacking some appliances necessary for switching, it was his duty to report to the train master, who would determine the advisibility of furnishing whatever was required. We think, under this showing, the yard master was the proper person to whom deceased [a switchman] should complain." And it is held that a foreman under whom a person is working is the proper person to whom complaints should be made of defects, and the employé has a right to rely upon such person's promise. *Wagon Co.* v. *Kehl,* 40 Ill. App. 584; *Patterson* v. *Railroad Co.,* 76 Pa. St. 389; *Furnace Co.* v. *Abend,* 107 Ill. 46; *Rothenberger* v. *Milling Co.* (Minn.), 59 N. W. 531. The burden of proof was upon the defendant in this case to show contributory negligence. It was a question for the jury to determine whether, under all the circumstances, if they believed there

was a structural defect in the platform, it was negligence upon the part of the plaintiff to continue in defendant's employment. Under the evidence it was certainly not, as a matter of law, absolutely conclusive of the want of due care upon the part of the plaintiff to resume work without inspection upon the morning of the accident. *Railroad Co.* v. *Babcock*, 154 U. S. 198, 14 Sup. Ct. 978.

Appellant also assigns as error the refusal of the court to give the eighth request submitted. An examination of the first, second, third, and eighth requests shows that they were substantially given in the charge of the court. It is unnecessary for the court to employ the language of the request if the ideas therein expressed are substantially embodied in the charge. The fourth request is: "If the jury find from the evidence that the accident was the result of the negligence of Charles E. McComie, and that said McComie worked with plaintiff in running the saw, then said McComie and plaintiff were fellow servants, and cannot recover." So far as this request is a correct statement of the law, it was embodied in the charge of the court. The jury were instructed that if they found that the injury resulted by reason of the plaintiff's neglect, or the neglect of his fellow servant, then no recovery could be had. As above stated, McComie in the performance of some duties was the fellow servant of plaintiff, while in others he was the representative of the master. If the accident was the result of McComie's neglect in having the platform repaired, he would not be a fellow servant, but if it was occasioned by his carelessness when managing the saw his relation would be entirely different. The request fails to distinguish between these relations, and is erroneous. What is here said concerning the fourth request fully meets appellant's contention as to the fifth. The sixth request was for a peremptory instruction to find for the defendant. It was rightly refused. That part of

the seventh request which was at all pertinent was given in substance by the court. That which was a statement of an abstract principle of law was not given. It was not error to refuse to give it.

It is further contended by appellant that the court erred in sustaining the objection to the question asked of plaintiff: "Now, you were still under the charge, on Monday morning, of Mr. Whalen, were you not?" Conceding that the question was proper, an examination of the record shows that the witness, not only before this question was asked, but subsequently, explained in great detail his relations to Whalen and McComie, and under whose directions he worked, and from whom he obtained his instructions; so that, if the court erred, it was harmless error.

We do not think that the verdict was excessive. The evidence shows that. in addition to the loss of two fingers, the remaining two upon the left hand were so mangled and lacerated as to leave them permanently injured, and devoid of strength. Plaintiff suffered greatly from the injury, and we do not think the amount given by the jury excessive. We see no error in the record, and affirm the judgment, with costs.

MERRITT, C. J., and BARTCH, J., concur.