## GREENVILLE OIL AND COTTON COMPANY v. L. H. HARKEY, BY NEXT FRIEND.

### Decided January 14, 1899.

#### 1. Damages for Personal Injury—Amount.

Damages in the sum of $3500, awarded to a young man whose right hand was cut by the saws of a linter and so mangled as to render amputation necessary, are not excessive.

#### 2. Same—Charge of Court.

In an action to recover damages for personal injuries sustained while attempting to fasten a bolt in a machine in operation, requested charges which ignore the facts of the plaintiff's youth and inexperience, and that the foreman had previously told him to repair the machine in that manner without warning him of the attendant danger, are properly refused.

#### 3. Master and Servant—Line of Duty.

An employe charged to keep a machine running and to tie in a bolt, if it fell out, is injured in the line of his duty where he was hurt while attempting to secure the bolt as instructed.

#### 4. Same—Warning Servant of Danger.

A master who directs an inexperienced employe to tie in a bolt attached to a machine having revolving saws without warning him of the attendant danger, violates his duty, although the employe knew that the saws would cut him if he came in contact with them.

#### 5. Same—Proximate Cause.

The proximate cause of the injury sustained by an inexperienced employe while attempting to fasten a bolt in a running machine in the manner he had been directed, is the master's failure to warn him of the danger which was not apparent.

#### 6. Same.

Contributory negligence is not attributable to an employe injured while attempting to fasten a bolt in a machine by winding a string about it, although the danger attending the screwing on of a nut would have been less, where the foreman repaired a similar defect in the former way and instructed the employe to do likewise.

APPEAL from Hunt. Tried before Hon. J. M. TALBOT.

*Craddock & Looney,* for appellant.

*Sherrill & Hefner,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by appellee in the District Court of Hunt County on the 3d day of February, 1898, against the appellant, to recover damages for personal injuries sustained while in the employment of appellant as a helper in the linter room of its cotton oil works at Greenville, Texas.

It was alleged that the appellee was a minor 19 years old in August,

1897, and without experience in working with machinery; that he was employed by appellant on November 30, 1897, as a helper in the linter room to work with dangerous machinery and in a place of great danger, without being warned of the danger incident to his employment; that he was directed by appellant's superintendent, who employed him, to put the linter machines to work and keep them going; that he was not furnished with proper and safe appliances and tools to do the work required of him, and that while fastening a bolt in one of the linters in the same way he had been told to fasten it on a day previous, and not knowing the danger of fastening it in that way, the danger not being apparent to him, his right hand was caught by the saws of the linter and cut and mangled so that amputation was necesary above the wrist joint.

Appellant answered by general and special demurrers, general denial, and specially, (1) that appellee was injured by his own contributory negligence; (2) that he was injured because of the negligence of a fellow servant; and (3) that he was injured on account of risks and hazards open and known to him, and such as were ordinarily and usually incident to his employment, all of which he assumed.

The demurrers were overruled, the case tried by a jury, and verdict and judgment rendered for $3500, and the case comes here on appeal.

The evidence is not conflicting, and is sufficient to establish the following conclusions:

In August, 1897, appellee Harkey became 19 years old, and was in that month hired as night watchman, which place he held until September, 1897. In this latter month he was employed by E. M. Cox, appellant's foreman at its oil works in Greenville, Texas, and was by Cox put to work in the linter room as a helper for one Gosey, who had charge of the linter room.

The linter room contained four linters or gin stands, used to strip or cut the lint from the cotton seed. They had circular saws arranged on a shaft about a quarter of an inch apart and revolved very rapidly. These saws were located under the upper portion of the breast of the gin stand, and this breast was raised by a lever at the side of the stand. This lever turned a rod which extended across the lower part of the front of the gin stand below the saws, and below the breast of the gin, and from about the middle of this rod another rod extended at right angles upwards towards the lower edge of the breast of the gin stand, where it joined to a rod of similar size extending downward from the lower edge of the breast of the gin. These rods were made to be fastened at this joint by a bolt about a quarter of an inch in diameter, and probably about two inches long, made with a head at one end and with screw threads for a nut at the other.

On November 30, 1897, appellee was engaged in sharpening the saws, which were out of the gin stand in a machine used for the purpose, when W. B. Samuells, appellant's superintendent, who it seems had authority to give such orders, directed appellee to finish sharpening the saws and replace them in the gin stand as soon as possible, which, with

the help of others to lift them, he did, while Gosey connected the upper and lower portions of the breast of the gin by putting in the bolt, and then started the gin to running.

In about an hour and a half appellee came into the linter room and saw that no seeds were falling from the linter in question, when he threw the lever to raise the breast of the gin, and the bolt having fallen out, the breast would raise but would fall back. He went to the proper place to get a bolt, but could find none with a nut. He took one that would fit, and got a twine string about a foot or a foot and a half long, with which he intended to tie the bolt in its place, and while thus engaged in tying in the bolt his right hand came in contact with the running saws and was cut and mangled to such an extent as to necessitate amputation above the wrist joint, in consequence of which he suffered great pain, both physical and mental, and at the date of the trial, March 23, 1898, he was still suffering and had not been able to work.

He had a fair education for a boy of his age in the country, and was of average intelligence. When Mr. Cox employed him he supposed him to be about 18 years old. He was never instructed as to his duties or how to operate or attend the machines, nor warned of the danger attending his employment. He knew, however, that these linters were dangerous machines to work with, and that if he came in contact with their saws they would cut him. When he attempted to put in the bolt he knew the saws were running, and were located up under the upper breast of the gin, about six inches, as he supposed, from the end of the bolt he was tying in, which was about the correct distance. He knew the gin could be stopped, and how to stop it, but had never stopped one. When he discovered that the bolt was missing there was no one in the room but himself, and without informing or reporting it to anybody, or being directed so to do, he undertook to put in the bolt and was injured. Cox and Gosey ran into the room upon hearing his outcry of pain, stopped the gin, and extricated him.

He had never worked around or with such machinery prior to this employment. A few days before he was injured, one of the other linters lost its bolt from the same joint, and he reported it to Mr. Cox, and that he could not find a bolt with a nut on it, when Mr. Cox selected one without a nut and gave it to him with instructions to get a piece of twine and tie it in, which he did while the gin was running and without injury to himself. He was not then told to stop the gin while fixing it, and on this occasion he was putting in and fastening the bolt in the same manner as he had been told to fix the other one. He knew, however, that it ought to be fastened by screwing on a nut, but did not know that it was any more dangerous to tie it in with a string than to fasten it by screwing on a nut, or to do any other work about the gin. He was wearing a jumper at the time he was injured, the sleeves of which came down to his wrist, but he did not know that the rapid revolutions of the saws and brushes behind them would have any tendency to draw his loose sleeves into the saws.

Gosey had charge of the linters, and he was employed to help him, and it was his duty to help keep them going and put in the bolt when necessary.   Appellant's superintendent, Samuels, testified that it was Gosey's duty to make repairs on the linters when necessary, and in order to avoid danger in working around the breasts of the gins in front of the same they were always stopped.   Mr. Cox, foreman of appellant, testified that Gosey had charge of the linter room, and had had for three years, and that it was the duty of employes to inform him, Cox, when anything got wrong with the machinery, and it was the business of Cox to fix it.   He did not know that appellee was at that time working with the linter.   He had not directed him to do so, but supposed he was down stairs cleaning out a chute as he had ordered him to do about twenty. or thirty minutes before he was hurt.

The gins are readily stopped by throwing off the belt.   The revolutions of the saws and brushes create an atmospheric disturbance, and if a coat sleeve was close enough, it might be thrown up and entangled in the saws.   The appellee was expected to do anything about the lint room or mill that he was directed to do.   The safest way to fasten the joint in the breast of the gin was with a bolt having a nut on the end of it, though he (Cox) sometimes tied them in himself.   Gin saws run very rapidly, and such machinery is very dangerous to work around.   One has to be on his guard.   When a gin is not feeding, the proper thing to do is to raise the breast.   This is the only way to find out why it is not feeding, and it can not be raised with the lever when the bolt is out.

Thirty-five hundred dollars is not an unreasonable amount of damages for appellee, if appellant is liable at all.

The first, second, third, and fourth assignments of error, complaining of the overruling of demurrers and special exceptions to the plaintiffs petition, are not well taken, and are all overruled.

The fifth assignment complains of the admission of evidence which was clearly competent and entirely relevant, and must therefore be overruled.

The sixth to the eleventh assignments, inclusive, complain of the court's charge, but we find no merit in any of them.   The charge, we think, is an admirable one, fair and complete in every respect, and hence these assignments are also overruled.

Nor did the court err in refusing to give the special instructions asked by appellant, as set out in the twelfth and thirteenth assignments of error.   Under the pleadings and evidence, they would have been improper and misleading, because it was pleaded and proved that Cox, the alter ego of appellant, had only a few days before given him a bolt and told him to get a string, and to repair the machine in the very way and manner that he was attempting to do it on this occasion, and he did not then warn him, and never had warned him, of the danger of doing it while it was running; yet he knew of his youth, which was sufficient to inform him of his inexperience and ignorance of the use and danger of

such machinery, because knowing his youth, it was his duty to inquire of him as to his experience, and to instruct him how to use the machine and how to fix it, and to point out the dangers incident thereto and warn him against the same. These requested charges wholly ignore these vital points in the case, and were therefore, as well as for other reasons, properly refused.

The fourteenth and fifteenth assignments of error are predicated upon the legal proposition that, "if a servant is injured in the performance of work not in the line of his trade or duty, when he was not ordered to perform such work, the master is not liable to him for such injury." Appellant's counsel cite in support of this proposition 2 Bailey, Personal Injuries, 3518, 3529. This work is not accessible to us, but the principle enunciated is not involved in this case, because we find from the evidence that it was his duty to fix in the bolt and keep the machine going, in order that his master's business should go on, and his foreman, who had employed and had the right to discharge him, had told him to do that kind of work in a previous instance, and exactly as he undertook to do it, and often did it that way himself, as he testified.

The sixteenth and seventeenth assignments of error raise the question as to whether the evidence established actionable negligence on the part of appellant, and urge that the evidence clearly proves contributory negligence on the part of the appellee.

It is alleged that appellee was a minor, and was inexperienced and had no knowledge of the dangers of working around and about these saws, and that appellant knew these facts and did not instruct him as to his duties nor warn him of the dangers attending the performance of the same; and this raises the serious question in this case.

The record discloses that he was 19 years old at the time he was employed; that Mr. Cox, the superintendent of the company, who employed and put him to work in the linter room, supposed him to be about 18 years old, so that his minority was known to appellant at the time, and presumably his inexperience and want of knowledge of the dangers attending the performance of the service required of him. He states that he knew it was dangerous to come in contact with the saws; that they would cut him if he did; and this knowledge admitted on his part is urged as a sufficient substitute for the warning, it being urged that if he knew of the danger it was wholly unnecessary to warn him, and that the only purpose of warning him was to give him information of the danger. But knowledge that it was dangerous to come in contact with the saws was not necessarily equivalent to knowledge that his hands were in danger of coming in contact with the saws in performing the act of winding the thread around the screw. An experienced operator might be aware of such danger, when an inexperienced youth would not, as will be more fully seen below. To be rash, impetuous, thoughtless, and reckless, are qualities generally found in the character of youthful and inexperienced persons, even in the face of danger, and the law, therefore, like a gentle parent, is ever watchful and thoughtful about

their safety. Hence those who employ them to work about or with dangerous machinery must not only instruct them as to the safe manner of operating such machinery, but must fully and faithfully warn them of the danger attending such operation, and how to avoid or guard against such dangers, and the law will not hold him guiltless who fails to do this.

It is insisted that he was guilty of contributory negligence in attempting to fasten the bolt by winding a string around the threads thereof, instead of putting a nut on it, and it seems that the danger attending the screwing on of the nut was very much less than that of winding on the string. But this point is fully met by the uncontradicted evidence that only a few days before Mr. Cox had told him to fix one of the other gins exactly that way, and he did it successfully and without injury to himself; and it thus appears that if he did select the more dangerous way of fixing it, it was because the master had instructed him to do it that way; and hence it does not lie in the appellant's mouth to complain of the way he did. it as more dangerous than some other, when he had taught him to do it that way.

It also appears from the testimony of appellant's superintendent, Mr. Samuells, that "in order to avoid danger in working around the breast of the gin, in front of the same, it is always stopped." Then if this is true, the young man should have been so instructed; but instead thereof Mr. Cox instructed him to tie in the bolt on a former occasion, and failed then to instruct him to stop the gin while doing it. This was, it seems to us, a most culpable omission of duty on the part of the master.

Again Mr. Cox testified: "The operation of the gin saws and the brushes would make atmospheric disturbance, and if a coat sleeve was close enough, it might be thrown up and entagled in the saws." Then why did not Mr. Cox tell him of this danger? Here was a lurking, invisible, secret danger, it seems, of which none but those having experience with the machine would know, unless perhaps an education in the technical laws of mechanics would supply the knowledge, and it is not shown that appellee was so educated.

These acts of negligence in failing to instruct and warn the youth, under the undisputed facts of this case, were wholly inexcusable, and were the proximate causes of the injury. Coombs v. Cordage Co., 102 Mass., 572; Hill v. Gust, 55 Ind., 45, and authorities cited; Dowling v. Allen, 74 Mo., 14; Grizzle v. Frost (Eng.), 3 Fost. & Finl., 622; Wood on Mast. and Serv., sec. 349, note 2; Railway v. Fort, 17 Wall. (U. S.), 553; Wood on Mast. and Serv., 2 ed., secs. 349, 350.

We are unable to say that the appellee was guilty of contributory negligence, or that the verdict is excessive, and the jury having ·found in his favor, and the evidence being sufficient to warrant the finding, we think the judgment ought to be affirmed, and so order.

*Affirmed.*

Writ of error refused.