GEORGE E. WINKLER vs. THE PHILADELPHIA AND READING RAILWAY COMPANY.

*Personal Injuries—Railroad—Servant—Primary Duties of Master*
*— Warning Inexperienced Servant—Assumption of Risk—*
*Act of Congress Modifying the Rule—Automatic*
*Couplers—Interstate Commerce—Negligence*
*per se—New Trial—Excessive Ver-*
*dict; Application to Reduce.*

1. The duty of the master stated in respect to the place in which the servant is to work, tools with which he is to work, the promulgation of rules, the warning of inexperienced servant, etc.

2. The rule stated respecting the assumption of risk on the part of the servant.

3. The assumption of risk, however, on the part of employees of railroad companies which are common carriers, engaged in interstate commerce has been modified by an act of Congress known as "The Safety Appliance Act," which makes it

unlawful for any common carrier to haul or permit to be hauled or used on its lines any car used in moving interstate traffic, not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

3. If the car was, at the time of the accident, being used in moving local traffic only, from point to point within the State, it would not be engaged in interstate commerce. If, however, the car being moved had come from a point out of the State, with freight to be here delivered, it would be moving interstate commerce. This would be so even though the car to which the tender was being coupled was not the car used in interstate traffic, if the removal of such car was a necessary step in getting at and moving said interstate car.

4. The tender of a locomotive engine, engaged in interstate commerce, is a car within the scope of the act of Congress, which uses the general terms locomotive, car or train. And even though the tender at the time of the accident was equipped with automatic couplers, but was so connected with the bullnose coupler that the coupling with other cars was not made automatically by impact, but so equipped that it made it necessary for men to go between the ends of the cars to couple and uncouple, then such coupling did not comply with the act of Congress, and was unlawful.

5. If at the time of the accident the defendant company was using such coupler, which was prohibited by the act of Congress, it was guilty of negligence *per se ;* and if the injuries complained of resulted from such unlawful use alone, then the defendant would be liable. The law manifestly contemplates that the car shall be so equipped that the coupling shall actually be made automatically, and if not so equipped, the plaintiff did not assume the risk arising therefrom, even though he continued in the employment of the defendant company after such unlawful use of the cars had come to his knowledge.

6. If, however, in using such unlawful coupler the plaintiff contributed to the accident by his own carelessness, he cannot recover, notwithstanding the fact that the coupling was unlawful. In such case he must take the consequences of his own contributory negligence.

7. If at the time of the accident the defendant company was not engaged in moving interstate commerce, but only local commerce, the said act does not apply. In like manner it does not apply if the cars in use were actually equipped with automatic couplers as contemplated by the act, and in compliance with its provisions.

8. After verdict and motion for a new trial, the Court announced that it had determined that a new trial should be granted on the ground that the verdict was excessive, but upon the application of the plaintiff for a reduction of the amount of the verdict, the motion for a new trial was refused.

*(June 20-25, 1902.)*

Lore, C. J., and Grubb and Pennewill, J. J., sitting.

*Victor B. Woolley* and *William S. Hilles* for plaintiff.

*Levi C. Bird* and *Andrew E. Sanborn* for defendant.

Superior Court, New Castle County, May Term, 1902.

Action on the case (No. 56, September Term, 1901), to recover damages for personal injuries.

The facts appear in the charge of the Court.

Lore, C. J., charging the jury :

Gentlemen of the jury:—George E. Winkler, the plaintiff in this action, claims that on the 19th day of February, 1901, he was in the employ of the Philadelphia and Reading Railway Company, the defendant, as head brakeman of the shifting crew, which was using shifting engine No. 1242 and its tender, in moving and delivering interstate commerce cars at the siding on the south side of this city, the defendant then and there being a common carrier of passengers and freight. That while coupling the tender to the next car, using a bullnose coupler, without fault on his part, his right hand was caught between the couplers, resulting in the loss of three fingers and otherwise crushing and injuring his hand. That the bullnose coupling on the tender was dangerous and unlawful. That he was inexperienced in the business of a brakeman and was not warned or instructed by the defendant as to the risk thereof. That his injuries were caused by the defendant's negligence.

The defendant, on the other hand, claims that the engine and tender were not engaged in moving interstate commerce at the time of the accident, but merely in moving local traffic. That the bullnose used on the tender at the time was necessary in order to safely move cars around sharp curves in the Diamond State Steel yard, where the automatic couplers would not work, and was a reasonably

safe and proper appliance for such purpose. That moreover the tender and cars were equipped with automatic couplers, as required by law. That the plaintiff sought work as a competent brakeman and also actually received instructions as to the risks of his employment, which risks and dangers were also open and known to the plaintiff. That his injuries were the result of his own carelessness.

It is conceded that the relation of master and servant existed between the plaintiff and the defendant at the time of the accident. We are asked to instruct you as to certain duties and obligations growing out of that relation.

It is the duty of the master to provide for his employees a reasonably safe place in which to work and reasonably safe tools and appliances with which to work, and also to keep them in a reasonably safe condition. The place, tools and machinery need not be of the best, nor of the latest pattern, nor of the most improved kind, but must be reasonably safe and adapted to the purpose for which they are to be used. If the master fails to perform his duty and injury results from such failure alone, he is liable.

It is the duty of the master to make, promulgate and enforce proper rules for the government of his business, where it is so large or complicated as to make his supervision impracticable. It is the duty of the servant to obey such rules, when reasonable and proper.

Where the master knows that the servant is inexperienced, he may not presume that the servant appreciates and knows the risks of his employment. In such cases it is the duty of the master to warn the servant against risks known to the master and which it is unreasonable to suppose the servant appreciates.

Where, however, a person of apparent maturity and of average capacity, solicits a particular kind of work, the master has a right, in the absence of information to the contrary, to assume that the applicant is qualified for the particular work applied for. It is only where the master knows of the disqualification of the servant to safely encounter dangers known to the master, and presumably unknown to the servant, that the duty of cautioning and instructing the servant arises.

*Louisville, etc., Co. vs. Miller, 104 Fed., 124.*

The servant assumes the dangers and hazards which are ordinarily incident to the service which he undertakes, and is presumed to have contracted with reference to them. Where the employment is dangerous he also assumes the risk he may incur from manifest peril.

*Stewart vs. P., W. & B. R. R., 8 Houst., 450.*

He also assumes the risk and dangers of devices and methods of work, which are open and apparent and equally well known to the servant as to the master.

*Creswell vs. W. & N. R. R. Co., 2 Pennewill, 220; Maul vs. Q. Anne R. R. Co., 1 Pennewill, 561; Huber vs. Jackson & Sharp Co., 1 Marvel, 374.*

These are some of the general rules governing the relation of master and servant.

The assumption of risk, however, on the part of employees of railroad companies which are common carriers, engaged in interstate commerce, has been modified by act of Congress known as " The Safety Appliance Act," passed March 2, 1893, and amended April 1, 1896, which was in operation at the time of the accident. This act provides as follows:

"Section 2. That on and after the first day of January, 1898, it shall be unlawful for any common carrier to haul or permit to be hauled or used on its lines any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

"Section 8. That any employee of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provisions of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train has been brought to his knowledge."

In this case it is claimed by the plaintiff, that at the time of

the accident he was engaged in moving interstate commerce for the defendant company, with a tender or car not equipped with couplers, coupling automatically by impact, which could be uncoupled without the necessity of men going between the ends of the cars, but were being coupled by a swinging bullnose and link, contrary to the act of Congress, and that his injuries resulted therefrom.

To sustain this contention, it is necessary for the plaintiff to show by a preponderance of the evidence :

1. That at the time of the accident he was engaged in moving cars then used in interstate traffic.

2. That at the time of the accident the cars then in use were not equipped with automatic couplers as required by the act of Congress.

The burden of proof is upon the plaintiff to show these facts :

*First.* If the tender and car were then in use in moving local traffic only from point to point within the limits of this State, they could not be engaged in interstate commerce.

If, however, the car being moved had come from a point out of the State, with freight to be here delivered, it would be moving interstate commerce. This would be so even though the car to which the tender was being coupled was not the car used in interstate traffic, if the removal of such car was a necessary step in getting at and moving said interstate car.

*Second.* Should you be satisfied that the tender was so engaged in moving interstate commerce, you must be further satisfied from the evidence that it was not equipped with automatic couplers.

We may say to you that the tender of a locomotive engine, engaged in interstate commerce, is a car within the scope of the act of Congress, which uses the general terms, locomotive, car or

train.   A tender is defined to be a car by Webster.   The tender is not a locomotive engine, or component part thereof, but is the small car carrying water and fuel for the engine, and to which the first passenger or freight car of the train is usually coupled.   This intêrpretation comes not only within the language of the act of Congress but is especially within its scope, which is to promote the safety of employees and travelers upon railroads.

Should you find that the tender at the time of accident was equipped with automatic couplers, but that it was so connected with the bullnose coupler that the coupling with other cars was not made automatically by impact, but so equipped that it made it necessary for men to go between the ends of the cars to couple and uncouple, then such coupling did not comply with the act of Congress and was unlawful.

If, at the time of the accident, the defendant was using such coupler, which was prohibited by the act of Congress, it was guilty of negligence *per se;* and if the injuries complained of resulted from such unlawful use alone, then the defendant would be liable.   The law manifestly contemplates that the car shall be so equipped that the coupling shall actually be made automatically, and if not so equipped, the plaintiff did not assume the risk arising therefrom, even though he continued in the employment of the company after such unlawful use of the cars had come to his knowledge.

If, however, in using such unlawful coupler the plaintiff contributed to the accident by his own carelessness, he cannot recover, notwithstanding the fact that the coupling was unlawful.

In such case he must take the consequence of his own contributory negligence.

Should you find that at the time of the accident the defendant company was not engaged in moving interstate commerce, but only local commerce, we say to you that the act of Congress does not apply.   In like manner it does not apply if the cars in use were actually equipped with automatic couplers as contemplated by the act and in compliance with its terms.

Should you find from the evidence the state of facts to be such that the act of Congress does not apply to the case, under the foregoing instructions, you should not consider the provisions of this act in making up your verdict, but be governed by the general rules relative to master and servant.

This action is based upon the negligence of the defendant company. Such negligence is never presumed, but must be proved, to entitle the plaintiff to a verdict. The burden of proving such negligence is upon the plaintiff.

It is the duty of the servant as well as of the master to exercise care and prudence in all cases commensurate with the risk or danger of the employment. Therefore, if the plaintiff contributed to the accident by his own negligence he cannot recover. Where contributory negligence is relied upon as a defense, however, the burden of proving such negligence is upon the defendant.

If you find for the plaintiff, your verdict should be for such sum as in your judgment, from the testimony, will reasonably compensate him for his injuries, including therein his loss of time and wages, his pain and suffering in the past and such as may come in the future, resulting from the accident, and also for such pecuniary loss as from the evidence the jury may believe will arise from his diminished ability to earn a living in the future.

Verdict for plaintiff for $8,000.

### MOTION FOR NEW TRIAL.

On June 20, 1903, motion for new trial was argued, said motion being based upon the following grounds :

*First.* The amount awarded to the plaintiff as his damages by the verdict of the jury is grossly excessive.

*Second.* Because the verdict rendered by the jury is so grossly excessive as to shock the conscience of the Court and clearly demon-

strates that it was the result of undue sympathy for the plaintiff or compassion, prejudice, partiality or caprice on the part of the jury.

*Stiller vs. Bohn Mfg. Co. (Minn., 1900), 82 N.W., 982; Louis-ville &c. R. R. Co. vs. Foley, 94 Ky., 220, 230; Savannah R. R. Co. vs. Howard (Georgia, 1892), 16 S. E., 306–38; Barg vs. Bons-field (1896), 65 Minn., 357, 361; Louisville &c. R. R. Co. vs. Low (Ky. 1893), 21 S. W., 648; Greenville &c. vs. Harkey (Tex., 1899), 48 S. W., 1005; Thompson vs. Chicago &c. R. R.Co. (Minn., 1898), 73 N. W., 707; Bolden vs. Jensen, 70 Fed., 505; Strong vs. R. R. Co., 94 Iowa, 380; Chapman vs. So. Pac. R. R. Co., 12 Utah, 30; Eldridge vs. Atlas &c. Co., 58 Hun. (N. Y.), 96; Neilon vs. Paper Co., 75 Wis., 579; Haynes vs. Erk, 6 Ind. App., 332; Gohagan vs. Aermotor Co., 67 Minn., 252; Brown vs. So. Pac. Ry. Co., 7 Utah, 288.*

(On June 25, 1902, the Court rendered the following decision):

LORE, C. J.:—After a careful consideration of this case, the Court have reached the conclusion that a new trial ought to be granted, on the ground that the verdict is excessive, but before ordering a new trial we will hear any application the plaintiff may have to make for a reduction of the amount of the verdict.

(*Mr. Hilles*, of counsel for plaintiff, asked for time to consider the matter, and, on June 26, 1902, appeared in court and stated that the plaintiff was willing to have the verdict reduced to five thousand dollars.)

LORE, C. J..—With the understanding that the amount of the verdict be reduced to five thousand dollars the Court discharge the rule and refuse to grant a new trial.

*Mr. Bird:*—I understand that that in no wise interferes with my right to all of my exceptions.

LORE, C. J. :—It does not affect your right at all. You have both remedies. Let the verdict be reduced by consent of the plaintiff to $5,000.